SPORTSERVICE CORPORATION, Appellant, v. FREEHOLD RACING ASSOCIATION and others, Respondents.

*No. 123. Argued September 2, 1969.—Decided September 30, 1969.*
(Also reported in 170 N. W. 2d 696.)

For the appellant there was a brief by *Lichtsinn, Dede, Anderson & Ryan,* and oral argument by *Peter C. Haensel,* all of Milwaukee.

For the respondents there was a brief and oral argument by *Nancy A. Simos* of Milwaukee.

HALLOWS, C. J.   Freehold, the owner of a race track in New Jersey, leased in July, 1961, a restaurant at the track to New Jersey Sportservice, Inc. (tenant). This concession agreement provided for the payment of percentage rentals during the racing seasons covered by the term thereof. Freehold, on May 28, 1962, borrowed $200,000 from Sportservice, the parent corporation of the tenant. This loan was evidenced by a promissory note signed by Freehold and the two Sampsons, which provided for interest at the rate of six percent per annum and payment in full on October 28, 1962. The note recited that as security for its payment all rents due under the concession agreement, including any extensions, amendments, supplements or renewals thereto, were assigned. The note also directed and authorized the tenant to pay the rent as it matured to the payee. During the racing season of 1962, 1963, and 1964, all sums due under the rental concession agreement were paid to the payee with the exception of the subject matter of this appeal.

During the 1963 racing season the tenant rendered services to Freehold in the sum of $9,619.99 and, by agreement between all the parties, the amount of this open account was added to the principal of the note. Thus this amount carried interest until after the original amount of the note was paid and was secured by the individual promise of the Sampsons. On October 6, 1964, the tenant furnished concession services for Freehold at a barbecue for which it claimed $10,174.33. On this item, the same procedure for payment was not followed. The payee claims this amount was paid by offsetting it against the rent due for October under the concession agreement and the balance of the rent of $354.88 was paid by the tenant to it pursuant to the assignment. This unilateral procedure by the payee had the same effect as the first transaction because it postponed the payment of part of the principal amount of the note which carried

interest and was secured by the personal liability of the Sampsons. It is this diversion of the rent by the payee through its control of its subsidiary which is the crux of this lawsuit.

The payee claims it had authority to modify the concession agreement and assignment and did so in effect by causing its subsidiary to apply the rent to its open account. The payee relies on the following language in the promissory note:

"The payee shall have the right to make any agreement with the undersigned or any of them or with any other party to or anyone liable on any of the indebtedness or interested therein for the compounding, compromise, discharge or release hereof, in whole or in part, or for any modification of the term thereof or any contract between the payee and the undersigned or any of them, or any other party, without notice to or assent from the undersigned."

The makers of the note claim this language of the note does not authorize such action on the part of the payee. Assuming, as claimed by the payee, it in effect modified the terms of the concession agreement and the assignment so that the rent could be applied on the open account owed to its subsidiary, we do not think the language of the note gives such power to the payee.

The note provides the payee may make an agreement with: (1) The undersigned, (2) or any of them, (3) or with any other party. Any other party, however, must be a party to or a person liable on the indebtedness or interested in the note. The tenant was not a party to the note or liable for any indebtedness on the note and could hardly be called interested in the indebtedness merely because under an assignment it paid its rent to the payee of the note. But if the tenant is considered "interested," the note restricts a modification to a contract existing between the payee and (1) the under-

signed, (2) or any of them, (3) or any other party. We cannot read the language to mean the payee can unilaterally modify a contract to which it is not a party.

Although the payee is a party to the note and the assignment, it is not a party to the lease. The fact its subsidiary is a party to that contract does not allow it to disregard its corporate entity and stand in the shoes of its subsidiary. Perhaps the payee considered its subsidiary and itself one entity for the purpose of this note, but there is nothing in the record which entitles this court to disregard the separate legal identities of these corporations. The interpretation contended for by the payee is unreasonable and does violence to the language. We think the trial court was correct in finding the payee was not authorized in causing its subsidiary to withhold the rent due under the lease and payable under the assignment and to apply it in payment of an open account owed by Freehold, one of the makers of the note.

The payee argues its release of security did not discharge the negotiable instrument or the obligation of the makers. If the action of the payee can be considered a release of security, it was an unauthorized release. The assignment of rents was as much a manner of payment of the note as it was security. The maturity of the note was October, 1962, but this date was disregarded by both parties in view of the assignment. The effect of this decision is that the promissory note is paid and the open account is unpaid.

*By the Court.*—Judgment affirmed.